560 S.E.2d 438

**Lori TARNOWSKI, Respondent,**

v.

**Maizie LIEBERMAN, Appellant.**

**No. 3444.**

Court of Appeals of South Carolina.

Submitted Oct. 22, 2001.

Decided Feb. 11, 2002.

Rehearing Denied March 20, 2002.

Dan A. Collins, of Dan A. Collins & Associates, of Greenville;  and James B. Richardson, Jr., of Richardson & Birdsong, of Columbia, for appellant.

David E. Turnipseed and Jason P. Boan, both of Turnipseed & Boan; and Charles A. Rice, Jr., all of Spartanburg, for respondent.

HEARN, C.J.

The estate of John Robert Harley, III appeals from the probate court's determination, as affirmed by the circuit court, that Harley and Lori Tarnowski were married at common law. It contends the probate court erred in finding a common law marriage absent a showing of cohabitation. We affirm.

## FACTS

Harley and Tarnowski met in June 1998. At that time, Tarnowski was employed as a park ranger at Jones Gap State Park. As part of her employment, she was required to spend most nights at the park. Nevertheless, she and Harley began dating, and within a few months, she was spending most of her free time at his home. She moved many of her personal effects to Harley's home, including clothes and furniture.

Harley purchased an engagement ring and a wedding ring in late November 1998. The couple went to Charleston on the weekend of December 11 13. During that time, Harley gave Tarnowski both rings, and her testimony is that the two considered themselves married from that point forward. Tragically, Harley died intestate on January 16, 1999.

Both before and after Harley's death, the couple behaved inconsistently with respect to their marital status. Tarnowski continued to live at Harley's farm when she was not working. Each told their respective best friend that they were married. However, to the rest of the world, the couple maintained that they were engaged. They told their parents they were engaged and began planning a May wedding. Tarnowski testified she did not tell her co-workers at the park about her marriage for fear her job would be jeopardized. The couple's wedding announcement appeared in the newspaper the same day as Harley's obituary. Following Harley's death, Tarnowski introduced herself to several people as his fiancee, including the personnel department at Harley's job and the minister who conducted the funeral. Moreover, Tarnowski did not

change her name or mailing address after the Charleston weekend.

Later, after seeking the advice of counsel, Tarnowski brought this action in the probate court seeking to be declared Harley's wife and the sole heir at law to his estate. The probate court found that Harley and Tarnowski were married at the time of his death, and the circuit court affirmed. This appeal followed.

## DISCUSSION

■ The estate contends on appeal that the probate court erred in finding a common law marriage because Tarnowski failed to present any evidence of marital cohabitation. The estate contends Tarnowski and Harley could not have cohabited because she was required to spend the majority of her nights at work. We disagree.

■ The issue of common law marriage sounds in law. *Richland Mem'l Hosp. v. English*, 295 S.C. 511, 513, 369 S.E.2d 395, 396 (1988). Our review in this case is limited to a determination of whether or not there is any evidence to support the findings of the trial judge. *Weathers v. Bolt*, 293 S.C. 486, 488, 361 S.E.2d 773, 774 (Ct.App.1987). Because this action sounds in law, and the existence of a common law marriage is a question of fact, this court is bound by the probate court's factual findings, and its credibility determinations. *Barker v. Baker*, 330 S.C. 361, 370, 499 S.E.2d 503, 508 (Ct.App.1998). "[T]he question is not what conclusion this Court would have reached had it been the fact-finder, but whether the facts as found by the probate court have evidence to support them." *Id.* Therefore, we must affirm if any evidence supports the probate court's findings.

■ In South Carolina, a common law marriage is formed when two parties have a present intent to enter into a marriage contract. *Id.* "It is essential to a common law marriage that there shall be a mutual agreement between the parties to assume toward each other the relation of husband and wife." *Johnson v. Johnson*, 235 S.C. 542, 550, 112 S.E.2d 647, 651 (1960).

The difference between marriage and concubinage ... rests in the intent of the cohabiting parties; the physical and temporal accompaniments of the cohabitation may be the same in both cases, but the intent in the two cases is widely apart always. The intent in marriage is usually evidenced by a public and unequivocal declaration of the parties, but that is not necessary; the intent may exist though never public and formally declared; nevertheless the intent must exist.... It is true that when the intent has not been formally and publicly declared, ... it may yet rest in circumstances.

*Kirby v. Kirby,* 270 S.C. 137, 140, 241 S.E.2d 415, 416 (1978) (quoting *Tedder v. Tedder,* 108 S.C. 271, 276, 94 S.E. 19, 20 (1917)).

Two lines of South Carolina common law marriage cases have emerged over the years. *Barker,* 330 S.C. at 367, 499 S.E.2d at 506. The first provides that a common law marriage may be proved by a preponderance of the evidence. *Kirby,* 270 S.C. at 140, 241 S.E.2d at 416; *Ex parte Blizzard,* 185 S.C. 131, 133, 193 S.E. 633, 634 (1937). The second line is based on "a strong presumption in favor of marriage by cohabitation, apparently matrimonial, coupled with social acceptance over a long period of time." *Barker,* 330 S.C. at 367, 499 S.E.2d at 506. Perhaps because of the brief time these parties cohabited, the probate court did not refer to the presumption in his order. Instead, he found that the parties cohabited as Tarnowski's work schedule allowed and that the "mutual intention of the parties was to establish a marital relationship as and of the time of the exchange of their vows in Charleston, South Carolina."

As noted earlier, intent to live together as husband and wife may be proven by circumstances even if never publicly declared. *Id.* Here, there is evidence of marital cohabitation. Tarnowski testified that she lived with Harley when she was not required to be at work. We do not accept the estate's argument that the couple could not have been cohabiting because Tarnowski's job required her to spend many nights at the state park. She testified that she lived there. She moved her things into the home, and there was testimony that her car was often seen there. Moreover, the probate court specifically found Tarnowski's witnesses highly credible and found

that some of the estate's witnesses were less credible given their financial interests in the outcome. Although we acknowledge that there is conflicting evidence in-the record as to the couple's marital status, we find the probate court's findings are supported by evidence in the record. Accordingly, the judgment below is

**AFFIRMED.**

GOOLSBY and HUFF, JJ., concur.